## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**AARON JORDAN**                                         **CIVIL ACTION**

**VERSUS**                                                      **NO: 15-1922**

**CITY OF NEW ORLEANS, ET AL.**                **SECTION: "I" (1)**

### ORDER AND REASONS

Before the court is a motion to dismiss and invocation of qualified immunity filed by defendants, Officer Derek Brumfield ("Brumfield") and the City of New Orleans. Rec. Doc. 7. Having reviewed the memoranda of the parties, the record in the case, and the applicable law, the Court concludes that the motion should be granted.

### I. Background

In 2009, plaintiff, Aaron Jordan ("Jordan"), was tried for and convicted of criminal trespass in the New Orleans Municipal Court Division "A" before The Honorable Paul N. Sens, a former judge of that court.  Rec. Doc. 1.  Three years later, in a letter dated July 24, 2012, Ed Quatrevaux ("Quatrevaux"), the New Orleans Inspector General, informed Desiree Charbonnet, the then-current judge for New Orleans Municipal Court, that he had referred to the Louisiana Judiciary Commission information regarding Judge Sens' practice of hiring family members to work at the New Orleans Municipal Court. *Id.*  Attached to the letter was a list of the names and incomes of Judge Sens' family members who worked at the New Orleans Municipal Court. *Id.* Judge Sens' niece, Lennee Sens-Crowley ("Sens-Crowley"), was listed as a minute clerk in Judge Sens' courtroom earning $61,088.00 per year as of 2011, and Sens-Crowley's husband, Dan Crowley, was listed as a minute clerk earning $52,065.00 per year as of 2011. *Id.*

Jordan heard media reports of Quatrevaux's letter and other issues regarding the Sens and Crowley families. *Id.* Jordan discovered that Sens-Crowley and Judge Sens' wife, Ann G. Sens, were working at Vick Realty, LLC, and he decided to inform their employers and clients of the allegations regarding nepotism by the Sens family. *Id.* He sent four letters regarding the Sens family to multiple recipients: (1) a letter dated July 4, 2013, sent to judges of the New Orleans Municipal Court, Traffic Court, and First and Second City Courts concerning Judge Sens and his family, and calling on Judge Sens to resign; (2) a letter dated August 26, 2013, sent to Vick Realty, LLC, concerning Sens-Crowley and Ann G. Sens; (3) a letter dated May 18, 2014, sent to Delery Comarda Realtors concerning Ann G. Sens; and (4) a letter dated May 2014 sent to various clients of Vick Realty, LLC concerning Ann G. Sens. *Id.*

In 2014, Jordan established a citizens watch group consisting of persons possessing concealed carry handgun permits. *Id.* On May 29, 2014, Jordan was interviewed by WDSU TV news regarding the group. *Id.*

On May 30, 2014, a warrant was issued for Jordan's arrest on the charge of stalking[1] Sens-Crowley. *Id.* Defendant Brumfield, made the warrant application under oath, and it stated that Sens-

---

[1]The parties dispute the nature of the charge in the warrant application. Plaintiff's complaint alleges that the warrant was issued on charges of "felony stalking" under LA. STAT. ANN. § 14:40.2(B)(2)(a). *See* Rec. Doc. 1 at 7. That statutory provision criminalizes stalking that has "placed the victim of the stalking in fear of death or bodily injury by the actual use of or the defendant's having in his possession during the instances which make up the crime of stalking a dangerous weapon or is found beyond a reasonable doubt to have placed the victim in reasonable fear of death or bodily injury." LA. STAT. ANN. § 14:40.2(B)(2)(a). In a reply brief, defendants attach the issued warrant and contend that it was issued on a general charge of stalking, not "felony stalking." *See* Rec. Docs. 14-1 & 14. The general definition of stalking under § 14:40.2 does not require placing the victim in fear of death or bodily harm, but instead requires only "intentional and repeated following or harassing of another person that would cause a reasonable person to feel alarmed or to suffer emotional distress." *See* § 14:40.2(A).

Crowley accused Jordan of "intentionally and repeatedly harassing her by sending letters to employers and clients," "harass[ing] the staff for whom [she] has worked in the courts during the time he had a case in which he was convicted for trespassing in 2009," and "harass[ing] the judge who sentence[d] him and the judge['s] wife and family." *Id.* The warrant application also stated that Sens-Crowley suffered "emotional distress" and that "after learning that [Jordan] was known to be a gun advocate has her in [an] even more state of fear of [Jordan] acting out against her and her family." *Id.* Jordan surrendered to central booking on June 4, 2014, and he was formally arrested and booked on June 5, 2014. *Id.*

On June 4, 2015, Jordan filed this lawsuit in the United States District Court for the Eastern District of Louisiana against Brumfield, in his individual and official capacities, and the City of New Orleans alleging claims under 42 U.S.C. § 1983 for violation of his Fourth  and Fourteenth Amendment right to be free from false arrest.[2]  *Id.*  Specifically, Jordan alleges that his arrest on the stalking charge was wrongful and without probable cause because the letters he sent did not contain any lies or threats and they cannot legally be considered harassment because they constituted free speech protected by the First Amendment. *Id.*  Jordan alleges that the City of New Orleans is liable for failing to supervise and train officers, and exhibiting "willful blindness towards the constitutional violations of its employees, constitut[ing] gross negligence and/or deliberate and conscious indifference to people's rights." *Id.*  Jordan also made claims against Brumfield and the City of New Orleans under Louisiana law for assault, battery, false imprisonment, intentional infliction of emotional distress and negligent infliction of emotional distress. *Id.*

---

[2] Jordan's Complaint also mentions the Eighth Amendment, which prohibits the infliction of "cruel and unusual punishments." U.S. Const. Amend. VIII.  The complaint does not state any facts giving rise to an Eight Amendment claim. Rec. Doc. 1.  Therefore, this claim is DISMISSED WITH PREJUDICE.

## II. Law and Analysis

**A.      Standard for Rule 12(b)(6) of the Federal Rules of Civil Procedure**

A motion to dismiss under Rule 12(b)(6) may be granted when a complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The well-pleaded factual allegations of the complaint, taken as true, must raise the plaintiff's right to recover above the speculative level. *Twombly*, 550 U.S. at 555-56. Facts from which the court could infer the mere possibility of liability will not suffice. *Iqbal*, 556 U.S. at 678 (quoting Fed. R. Civ. P. 8(a)(2)). However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of these facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

On a motion to dismiss, the court must take all well-pleaded factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Nevertheless, "conclusory allegations and unwarranted deductions of fact are not admitted as true, especially when such conclusions are contradicted by facts disclosed by document appended to the complaint." *Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974).

**B.      Officer Brumfield's Qualified Immunity Claim as to the Individual Capacity Claims Against Him in the Context of Rule 12(b)(6) of the Federal Rules of Civil Procedure**

When considering a qualified immunity defense raised in the context of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court must first determine whether "the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).  "Thus, a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Id.* If the court finds plaintiff's pleadings sufficient, and the court is "unable to rule on the immunity defense without further clarification of the facts, it may issue a discovery order narrowly tailored to uncover only those facts needed to rule on the immunity claim." *Id.* (quotations omitted).  A discovery order is properly ordered when: "(1) the defendant's entitlement to immunity turns at least partially on a factual question; (2) the district court is unable to rule on the immunity defense without clarification of these facts; and (3) the discovery order is narrowly tailored to uncover only the facts necessary to rule on the immunity defense." *Webb v. Livingston*, - - - Fed. Appx. - - - , 2015 WL 4385287, * 2 (5th Cir. Jul. 17, 2015).

Qualified immunity is an affirmative defense that protects public officials who are sued in their individual capacities for violations of constitutional rights.  Government officials are entitled to qualified immunity to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).  The qualified immunity defense is intended to provide protection to "all but the plainly incompetent or those who knowingly violate the law, and courts will not deny immunity unless existing precedent . . .  placed the statutory or

constitutional question beyond debate." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (quotations omitted).

"To establish an entitlement to qualified immunity, a government official must first show that the conduct occurred while he was acting in his official capacity and within the scope of his discretionary authority." *Beltran v. City of El Paso*, 367 F.3d 299 (5th Cir. 2004). When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *Kitchen v. Dall. Cnty., Tex.*, 759 F.3d 468, 476 (5th Cir. 2014). A plaintiff meets that burden and overcomes an official's qualified immunity defense by establishing "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir.2011) (*en banc*) (citations and quotations omitted). If a plaintiff cannot establish one or both prongs, the official's qualified immunity prevails and the plaintiff's claims against the official must be dismissed. When considering whether or not a plaintiff has established both prongs, courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).

For example, in *Morgan*, the Fifth Circuit sitting *en banc* began by addressing the second prong and, after determining that the plaintiff could not show a violation of a clearly established right at the time of the conduct, decided to leave a number of the alleged constitutional violations in the first prong unaddressed. *See* 659 F. at 385—90. The *Morgan* court reasoned that doing so was appropriate where the factual record was insufficiently developed as to those alleged violations and

it noted that courts should "think hard, and then think hard again before unnecessarily deciding the merits of a constitutional issue." *See id.* at 385.

Jordan alleges that Brumfield violated his Fourth Amendment right to be free from false arrest.  Rec. Doc. 1. This right is clearly established. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 206 (5th Cir. 2009) (citations omitted).

The Fourth Amendment, made applicable to the states via the Fourteenth Amendment, "ensures that '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause.'" *Id.* at 195 (quoting *New York v. Burger*, 482 U.S. 691, 699, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987)).  "The constitutional claim of false arrest, in violation of the Fourth Amendment, requires a showing that there was no probable cause." *Navarro v. City of San Juan, Tex.*, - - - Fed. Appx. - - -, 2015 WL 5049911, at *4 (5th Cir. 8/27/2015) (citations omitted).  The Supreme Court of the United States "has defined probable cause as the 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable causation, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Piazza v. Mayne*, 217 F.3d 239, 245-46 (5th Cir. 2000) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979)).  A police officer is "entitled to qualified immunity for an arrest 'if a reasonable person in [his] position could have believed he had probable cause to arrest.'" *Navarro*, 2015 WL 5049911, at *4 (quoting *Glenn v. City of Tyler*, 242 F.3d. 307, 313 (5th Cir. 2001).  Further, "[w]here an arrest is made under the authority of a properly issued warrant, the arrest is simply not a false arrest." *Smith v. Gonzales*, 670 F.2d 522, 526 (5th Cir. 1982).

While a warrant issued by a non-biased magistrate judge is the "clearest indication" that the officer acted in an "objectively reasonable manner," there is a "good-faith exception" to this general rule which may prevent an officer from establishing that qualified immunity applies. *See U.S. v. Triplett*, 684 F.3d 500, 504 (5th Cir. 2012) (citing *Messerschmidt v. Millender*, — U.S. —, 132 S.Ct. 1235, 1245, 182 L.Ed.2d 47 (2012)); *see also Malley v. Briggs*, 475 U.S. 335, 345—46, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). When considering if the good-faith exception applies, courts must determine "whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* The Fifth Circuit has recognized four circumstances where there is no good faith:

> (1) If the issuing magistrate/judge was misled by information in an affidavit that the affiant knew was false or would have known except for reckless disregard of the truth; (2) where the issuing magistrate/judge wholly abandoned his or her judicial role; (3) where the warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where the warrant is so facially deficient in failing to particularize the place to be searched or the things to be seized that the executing officers cannot reasonably presume it to be valid.

*Triplett*, 684 F.3d at 504.

While two of the *Triplett* exceptions merit consideration, the Court cannot conclude that Jordan's complaint supports the possibility that a good-faith exception applies. As initial matters, there is no indication that the magistrate judge acted improperly here and the last good-faith exception recognized in *Triplett* applies to search warrants, not arrest warrants, meaning neither the second nor the fourth exceptions apply.

As to the first *Triplett* exception listed above, the Court cannot conclude from Jordan's complaint that the magistrate judge was misled by information in the affidavit that Jordan knew to

be untrue. Jordan alleges that Brumfield swore out a warrant application solely because of Jordan's reputation as a gun rights advocate and not because Brumfield actually had reason to think Jordan had committed stalking. *See* Rec. Doc. 1 at 9. Were it that Jordan alleged that Brumfield's affidavit omitted key mitigating facts known to Brumfield or that Brumfield otherwise intentionally mischaracterized the information known to him when applying for a warrant, it might be possible to conclude a good-faith exception would apply. Considering the allegations in plaintiff's complaint and a review of the warrant application, however, it is reasonable to conclude that Brumfield simply listed in the affidavit the information provided to him by Sens-Crowley—including Jordan's reputation as a gun rights advocate—and left it for the magistrate judge to decide if probable cause existed. There is, in other words, no indication that Brumfield misled the magistrate judge, meaning the first good-faith exception recognized in *Triplett* does not apply in this case.

The fourth and final good-faith exception recognized in *Triplett* also does not apply. This is because the Court cannot conclude from the allegations that Brumfield's affidavit so lacked any indicia of probable cause that it rendered official belief in the existence of probable cause entirely unreasonable. An underlying dispute as to this issue is the exact criminal charge brought against Jordan.

Jordan argues that he was charged with "felony stalking" pursuant to LA. STAT. ANN. § 14:40.2(B)(2)(a) (which requires that the victim be under fear of death or bodily harm), as opposed to a misdemeanor charge of stalking under LA. STAT. ANN. § 14:40.2(A) (which does not). *See supra* n.1. The warrant and Brumfield's supporting affidavit at no point reference "felony stalking," but instead consistently list Jordan's alleged offense as simply "stalking" under "14:40.2." *See* Rec.

Doc. 7-2. Brumfield's affidavit supporting the warrant does reference the alleged victim's "state of fear," but this allegation could be pertinent to either a misdemeanor or felony stalking charge.

Furthermore, Jordan does not contend that there is a legal requirement that an affidavit supporting a warrant specify the *exact* statutory violation, but rather only that it establish probable cause of a violation of the law. The Court finds no authority to conclude otherwise. *See U.S. v. Koyomejian*, 970 F.2d 536, 544 (9th Cir. 1992) (Kozinki, J. concurring) ("I am aware of no constitutional requirement that an applicant for a warrant specify, and the judge determine, the precise statute violated; all authority is to the contrary"); *see also* LA. CODE. CRIM. PROC. ANN. art. 202(A) (requirements for issuance of arrest warrant under Louisiana law). This means the Court moves forward with the understanding that the relevant probable cause analysis requires assessing whether there was probable cause for any crime listed in LA. STAT. ANN. § 14:40.2, including § 14:40.2(A), which does not specifically require that the victim be in fear of death or bodily harm.

Jordan cites to a number of Louisiana cases supporting the proposition that the alleged conduct in Brumfield's affidavit could not support either a misdemeanor or felony stalking conviction. *See* Rec. Doc. 8 at 10—14. But the threshold for establishing that it was entirely unreasonable to believe probable cause existed is a high one and "it goes without saying that where a magistrate acts mistakenly in issuing a warrant but within the range of professional competence of a magistrate, the officer who requested the warrant cannot be held liable." *See Messerschmidt*, 132 S.Ct. at 1245.

Even if ultimately mistaken, it seems "within the range of professional competence" for a magistrate judge to conclude that the information supplied in Brumfield's affidavit supported probable cause. The affidavit provides at least some detailed description of the alleged harassing

10

behavior, as well as past harassing behavior that might give a magistrate judge reason to think it probable that Jordan was harassing Crowley-Sens. *See* Rec. Doc. 7-2 at 2. The statement that Crowley-Sens was in a state of fear in part because Jordan was "known to be a gun advocate" may not be pertinent to a probable cause analysis for stalking, but it does not detract from the fact that, under the liberal standard supplied in *Messerschmidt*, a reasonable magistrate could conclude from the rest of the affidavit that there was probable cause for a stalking charge. *See id.*

Accordingly, none of the good-faith exceptions apply, and the Court concludes that Brumfield acted in an objectively reasonable manner. He is therefore entitled to qualified immunity.

**C.    Official Capacity Claims Against Officer Brumfield and the City of New Orleans**

A claim against a police officer in his official capacity is treated as a claim against the municipality that the officer serves. *Brooks v. George Cnty., Miss.*, 84 F.3d 157, 165 (5th Cir. 1996). In *Monell v. Dep't of Soc. Servs. of City of New York*, the Supreme Court of the United States held that local governments cannot be held liable under § 1983 for constitutional deprivations effected by their individual employees in their official capacities absent a showing that the pattern of behavior alleged arose from "the execution of a government's policy or custom." 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). To succeed on a *Monell* claim, the plaintiff must establish: (1) an official policy or custom, of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom. *Valle v. City of Hous.*, 613 F.3d 536, 541-42 (5th Cir. 2010).

The "policy maker" prong is satisfied if actual or constructive knowledge of a policy is attributable to the municipality's governing body or to an official to whom the municipality has delegated policy making authority. *Webster v. City of Hous.*, 735 F.2d 838, 842 (5th Cir. 1984) (*en*

11

*banc*).  Presumptive policymakers for the police include the mayor, the city council and the chief of police. *Id.*

      The "official policy" prong requires that the deprivation of constitutional rights be inflicted pursuant to an official custom or policy. "Official policy is ordinarily contained in duly promulgated policy statements, ordinances or regulations." *Piotrowski v. City of Hous.*, 237 F.3d 567, 579 (5th Cir. 2001).  However, a policy may also be a custom that is ". . . a persistent, widespread practice of, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy . . ." *Id.* (quoting *Webster*, 735 F.2d at 841).

      The failure to train or inadequate training of officers can be an official policy that subjects the municipality to liability under § 1983, "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come in contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412  (1989).  In *Bd. of Comm'rs of Bryan Cnty., Okla. v. Brown*, the Supreme Court of the United States explained that an "inadequate training claim" ordinarily involves

> a deficient training "program," necessarily intended to apply over time to multiple employees. Existence of a "program" makes proof of fault and causation at least possible in an inadequate training case. If a program does not prevent constitutional violations, municipal decisionmakers may eventually be put on notice that a new program is called for. Their continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action – the "deliberate indifference" – necessary to trigger municipal liabilty . . . In addition, the existence of a pattern of tortious conduct by inadequately trained employees may tend to show that the lack of proper training, rather than a onetime negligent administration of the program or factors peculiar

> to the officer involved in the particular incident, is the "moving
> force" behind the plaintiff's injury.

520 U.S. 397, 407-08, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

To satisfy the "moving force" prong, the plaintiff must show both culpability and causation. A municipality is culpable under § 1983 if: (1) the official policy is facially unconstitutional; or (2) if a "facially innocuous" policy was "promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." *Piotrowski*, 237 F.3d at 579 (quoting *Bryan Cnty.*, 520 U.S. at 407). "Deliberate indifference of this sort is a stringent test, and 'a showing of simple or even heightened negligence will not suffice' to prove municipal culpability." *Id.* (quoting *Bryan Cnty.*, 520 U.S. at 407). "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference . . ." *Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999). Generally, proving deliberate indifference requires proving a pattern of violations. *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003) (quoting *Thompson v. Upsher Cnty.*, 245 F.3d 447, 459 (5th Cir.2001)).

Causation requires a "direct causal link between the municipal policy and the constitutional deprivation." *Piotrowski*, 237 F.3d at 580. A *Monell* plaintiff must "establish both the causal link ("moving force") and the City's degree of culpability ("deliberate indifference" to federally protected rights)" because "[w]here a court fails to adhere to the rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability." *Id.* (citing *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir.1998)).

The Court concludes that Jordan has failed to sufficiently allege that any possible inadequate training of Brumfield was the cause or "moving force" of his alleged constitutional violation. This is because the causal link between any alleged unconstitutional conduct by Brumfield was severed

by the neutral magistrate judge's issuance of an arrest warrant. *See Taylor v. Gregg*, 36 F.3d 453, 456 (5th Cir. 1994) ("[I]f facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest.").  As explained above, a neutral magistrate judge issued the arrest warrant upon reviewing the facts supporting Officer Brumfield's warrant application and nothing in Jordan's complaint indicates that the Court should question the validity of the magistrate judge's action. The magistrate judge's review and warrant issuance severed any causal link between a municipal policy and the alleged constitutional deprivation. As such, any inadequate training of Brumfield cannot be the "moving force" of the alleged constitutional violation under *Monell*.  Therefore, the official capacity claim against Brumfield and the § 1983 claim against the City of New Orleans must be dismissed.

**D.      State Law Claims against Officer Brumfield and the City of New Orleans**

Jordan also brings Louisiana state-law claims of assault, battery, false imprisonment, intentional infliction of emotional distress and negligent infliction of emotional distress against Officer Brumfield and the City of New Orleans. Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction."   Generally, "if all the federal law claims are dismissed prior to trial, a district court should dismiss the state law claims." *Sprague v. Dep't of Family & Prot. Servs.*, 547 F. App'x 507, 509 (5th Cir. 2013); *see also Bass v. Parkwood Hosp.*, 180 F.3d 234, 246 (5th Cir. 1999). "[I]t is clear that a district court has wide discretion to refuse to hear a pendent state law claim." *Robertson v. Neuromedical Ctr.*, 161 F.3d 292, 296 (5th Cir. 1998). Having dismissed Jordan's federal-law claims, the Court declines to exercise supplemental jurisdiction over Jordan's remaining state-law claims.

14

### III.  Conclusion

For the reasons stated above,

**IT IS ORDERED** that defendants' motion to dismiss is **GRANTED.**  The federal-law claims against all defendants are **DISMISSED WITH PREJUDICE**. The state-law claims against all defendants are **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction. Rec. Doc. 7.

New Orleans, Louisiana, this __17th__ day of February, 2016.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**